UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:19-cr-302-TPB-SPF

RAEKWON NIHEEEM SCOTT,

    Defendant.
_____/

## ORDER GRANTING "DEFENDANT RAEKWON NIHEEM SCOTT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE"

This matter is before the Court on "Defendant Raekwon Niheem Scott's Motion to Dismiss the Indictment with Prejudice," filed by counsel on November 15, 2024. (Doc. 120). On November 21, 2024, the United States of America filed a response in opposition to the motion. (Doc. 124). The Court held a hearing on January 29, 2025, to address this matter. (Doc. 132). After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

In the indictment, Defendant is charged with conspiracy to distribute over 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). Defendant seeks to dismiss the second superseding indictment on the basis that his right to a speedy trial was violated due to the lengthy post indictment delay in this case.

The facts necessary to decide this issue are mostly undisputed. On April 12, 2019, Defendant was arrested by the Pinellas County Sheriff's Office and charged with conspiracy to traffic in methamphetamine. Two days later, he posted a $15,000 bond

and returned to his hometown of Moultrie, Georgia. On June 18, 2019, the State Attorney's Office for Florida's Sixth Judicial Circuit filed a "No Information," indicating that the State of Florida was declining to prosecute Defendant.

On July 24, 2019, Defendant and two others were charged in the instant case by indictment.[1] According to the testimony and evidence presented at the hearing, the United States Marshals Service ("USMS") made only two attempts to locate and apprehend Defendant – on October 18, 2019, and February 28, 2020.

On May 1, 2024, Defendant was driving an 18-wheeler in Indiana for work when he was stopped by local law enforcement for an alleged civil traffic infraction. During the stop, the officers discovered the federal warrant associated with this case and arrested Defendant.

## Analysis

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy and public trial. U.S. Const. amend. VI. When that right is violated, a trial court must dismiss the indictment. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).

As a threshold matter, a defendant must first show the length of the delay between the indictment and brining the defendant to trial is long enough to presume prejudice and trigger a full-fledged constitutional analysis. *See United States v. Vargas*, 97 F.4th 1277, 1285 (11th Cir. 2024); *Villarreal*, 613 F.3d. at 350. A delay of

---

[1] Co-defendants Sekou Mitchell and Brandon Sarnik were sentenced on January 24, 2020, and February 25, 2020, respectively. Michell was released from federal prison on March 1, 2024, while Sarnik is serving a Florida state sentence with a current release date of December 4, 2026.

more than one year is generally enough to presume prejudice. *Vargas,* 97 F.4th at 1285. Here, the delay of nearly five years is enough to presume prejudice, and the Government does not contest that sufficient time has elapsed to trigger a constitutional analysis.

To determine whether a defendant's constitutional right to a speedy trial has bene violated, courts then consider "whether the first three '*Barker* factors' – (1) the length of the delay, (2) the reason for the delay and (3) the defendant's assertion of his speedy-trial right – weigh heavily against the government." *Id.* (citing *Turner v. Estelle*, 515 F.2d 853, 856-58 (5th Cir. 1975)). If so, prejudice is presumed and the defendant prevails. *Id.* If not, the defendant must establish actual prejudice to prevail on his claim. *Id.* There are no hard and fast rules – each case must be decided upon its own facts, "and district courts are afforded 'considerable deference' when weighing the *Barker* factors." *Id.*

The burden is on the Government to explain the length and cause of the delay. *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018) (citing *United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006). "The longer the delay, . . . the heavier the government's negligence must be weighted." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 657 (1992)). After all, "[a]lthough negligence is obviously to be weighted more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657.

To explain the length of and reason for the delay, the Government mostly argues that the USMS acted diligently by making two attempts in five years to arrest

Defendant, but USMS could not reasonably have done more because it was understaffed and lacked the resources necessary to locate and apprehend Defendant. Although neutral on its face, a lack of governmental resources should be "weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *See Vargas*, 97 F.4th at 1287 (quoting *Barker*, 407 U.S. at 531). Even if understaffed, two attempts in nearly five years does not seem to constitute serious or diligent effort. The Court notes that this determination of a lack of diligence does not cast any negative implications on Deputy United States Marshal Joshua Perreira as an individual, who is obviously a hard-working and dedicated public servant. But again, the burden to show diligence rests with the Government, and the delay caused by a lack of resources is clearly attributable to the Government and not Defendant.

The Government also presents the COVID-19 pandemic as a complicating factor to explain the delay.[2] But USMS's first and only attempts to physically locate and apprehend Defendant occurred before the pandemic, and even after the end of the pandemic, USMS did not take diligent actions or efforts to arrest Defendant.[3] Although some delay due to the onset of the COVID-19 pandemic would be justifiable,

---

[2] "After the World Health Organization declared the COVID-19 outbreak a global pandemic on March 11, 2020, then-President of the United States Donald Trump declared a national emergency on March 13. At that point, many government institutions began to close for what turned out to be an extended period of time, affecting all aspects of the criminal justice system." *Vargas*, 97 F.4th at 1291 (internal citations omitted).

[3] The Court notes that at the evidentiary hearing, Deputy United States Marshal Joshua Perreira testified that he, on occasion, conducted a few computer searches on Defendant from his office. This testimony was not particularly developed as to the quantity or quality of searches, and the Court cannot say that this testimony establishes the necessary diligence here.

it certainly cannot be said that the pandemic "gave the government a complete pass to abandon all of its obligations and duties." *See id.* at 1292. Had USMS made any concrete affirmative efforts to locate or apprehend Defendant during or after the pandemic, the outcome may very well have been different here.

Based on the length of the delay and the reason for the delay, the Court finds that the Government did not act with the required diligence, so these factors weigh heavily against the Government. Based on the evidence presented by the Government at the hearing, it is obvious that but for the fact that Defendant was apprehended in Indiana for the civil traffic infraction, he would have never been arrested and would still be living freely in Moultrie, Georgia.

The Government additionally argues that Defendant did not timely assert his speedy trial right. As part of this argument, the Government points to a few continuances requested by Defendant during the pendency of this case. However, those continuances were due to the Government's delay in discovery production and should not be attributed to him. Additionally, the Government suggests that Defendant knew of his indictment years before he was arrested. But this is not clearly established by the evidence – there is some mixed testimony about what information USMS gave to Defendant's family members concerning their investigation and what, if any, information was passed along to Defendant. Ultimately, the Government did not present convincing proof that Defendant was aware of the indictment prior to his arrest. The Court therefore finds that this factor weighs against the Government.

## Conclusion

The Court more than understands the difficulties and challenges facing USMS. A 2021 report from the Office of the Inspector General for the Department of Justice highlights how USMS is facing significant resource and staffing challenges as it struggles to fulfill one part of its mission.[4] *See* "Audit of the U.S. Marshals Service Judicial Security Activities," Department of Justice, Office of the Inspector General, https://www.oversight.gov/sites/default/files/documents/reports/2021-06/21-083.pdf (June 2021).

But even so, the Court is bound by the Sixth Amendment. "[T]he Sixth Amendment requires a diligent, good-faith effort on behalf of the government to locate and bring a defendant to trial." *Vargas,* 97 F.4th at 1287 (citing *Machado*, 886 F.3d at 1080. Here, there were no efforts made to locate and bring Defendant to trial after February 28, 2020. After considering the testimony and evidence presented, the Court finds that the length of the delay and the reason for the delay weigh heavily against the Government. The Court also finds that Defendant has not been dilatory in asserting his speedy trial right, which also weighs heavily against the Government.

---

[4] USMS's stated mission is to "protect, defend, and enforce the American justice system," and its wide variety of statutory responsibilities include "protecting the federal judiciary, apprehending federal fugitives, transporting and housing federal pre-trial detainees, locating and recovering missing children, enforcing sex offender compliance, operating the Witness Security Program, and managing and selling federally seized assets acquired by criminals through illegal activities." USMS has identified weaknesses in its judicial security capabilities, which is concerning at a time that the number of threats directed at members of the judiciary and other USMS-protected persons has nearly doubled. Among other things, USMS has determined that it is operating with a significant shortage of deputy United States Marshals and requires around 1,200 more deputies across the entire organization to fulfill its missions.

Because the first three *Barker* factors weigh heavily against the Government, prejudice to Defendant is presumed and he does not have to show actual prejudice.

The portion of the delay attributable to the Government exceeds the threshold needed to establish a speedy trial claim. "Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interest of criminal suspects assigned a low prosecutorial priority." *Doggett*, 505 U.S. at 657. Defendant's motion is granted.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant Raekwon Niheem Scott's Motion to Dismiss the Indictment with Prejudice (Doc. 120) is hereby **GRANTED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>24th</u> day of February, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE